## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER LEE KINKENNON,**

      **Plaintiff,**

    **vs.**                                     **Civ. No. 24-1041 DHU/JFR**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 9)[2] filed December 11, 2024, in connection with Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision, With Memorandum in Support,* filed January 9, 2025.  Doc. 12. On March 17, 2025, Defendant filed a Response.  Doc. 16.  On March 28, 2025, Plaintiff filed a Reply.  Doc. 18.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken and recommends that it be **DENIED**.

### I.  Background and Procedural Record

Plaintiff Christopher Lee Kinkennon ("Mr. Kinkennon") alleges that he became disabled on December 16, 2014, at the age of thirty-five years and seven months, because of post-

---

[1] On March 4, 2025, United States District Judge David H. Urias entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 15.

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 9), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

traumatic stress disorder, knee problems (both), back problem, hip problem (right), arthritis, neuropathy, tobacco use, and generalized anxiety disorder.  Tr. 285.  Mr. Kinkennon completed a GED in 1997 and has worked as a fast food cook, oil field crew member, flooring installer, commercial painter, office supplies stocker, and supercenter stocker.  Tr. 286.  Mr. Kinkennon stopped working on December 15, 2014, because of his alleged impairments.  Tr. 285.

On June 13, 2021, Mr. Kinkennon protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*  Tr. 207-11, 212-21.  On July 20, 2021, the Administration notified Mr. Kinkennon that he did not qualify for DIB because he had not earned enough work credits. Tr. 106-08.  On February 11, 2022, Mr. Kinkennon's SSI application was denied.  Tr. 72, 73-84, 111.15.  On March 28, 2023, Mr. Kinkennon's SSI application was denied at reconsideration. Tr. 85-99, 100, 121-25.  On April 13, 2023, Mr. Kinkennon requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 13, 2023.  Tr. 38-71, 127. Mr. Kinkennon appeared at the hearing with attorney representative Angie Saltsman.[3]  *Id.*  On April 30, 2024, ALJ Bradley Davis issued an unfavorable decision.  Tr. 14-31.  On August 27, 2024, the Appeals Council issued its decision denying Mr. Kinkennon's request for review and upholding the ALJ's final decision.  Tr. 1-6.  On October 15, 2024, Mr. Kinkennon timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

Mr. Kinkennon argues that the ALJ improperly rejected portions of consultative examiner Maria King, NP-C's opinion of Mr. Kinkennon's ability to do work-related physical activities and failed to explain why the RFC assessment conflicts with portions of that opinion that the

---

[3] Mr. Kinkennon is represented in these proceedings by Attorney Matthew R. McGarry.  Doc. 1.

ALJ purported to find persuasive. Doc. 12 at 1. For the reasons discussed below, the Court finds

that the ALJ applied the correct legal standards evaluating NP-C King's opinion and that the

RFC is supported by substantial evidence.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months". 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals). The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 416.920(a)(4) (disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.**    **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not

based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,*

373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient

particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ determined that Mr. Kinkennon had not engaged in substantial gainful activity

since June 13, 2021, his SSI application date.  Tr. 20.  He found that Mr. Kinkennon has severe

impairments of osteoarthritis, degenerative joint disease, neuropathy, PTSD, depressive disorder,

and generalized anxiety disorder.  *Id.*  The ALJ determined that Mr. Kinkennon's impairments

did not meet or equal in severity any of the listings described in the governing regulations, 20

CFR Part 404, Subpart P, Appendix 1.  Tr. 20-23.  Accordingly, the ALJ proceeded to step four

and found that Mr. Kinkennon has the residual functional capacity to perform light work as

defined in 20 C.F.R. 416.967(b) with the following limitations:

> The claimant can only occasionally stoop, kneel, crouch, or crawl.  The claimant
> can only occasionally climb stairs and ramps but no ladders, ropes, or scaffolds.
> The claimant can understand and remember simple instructions, can sustain
> attention and concentration to complete simple tasks within customary workplace
> breaks, can use judgment to make simple work-related decisions, can interact as
> needed with supervisors and coworkers but only occasional interaction with the

general public.  The claimant can tolerate occasional changes in a routine work setting.

Tr. 23-29.  The ALJ determined that Mr. Kinkennon was not capable of performing his past relevant work, but considering his age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy Mr. Kinkennon could perform.[5]  Tr. 29-30.  The ALJ determined, therefore, that Mr. Kinkennon is not disabled.  Tr. 31.

### A.    Evidence Related to Mr. Kinkennon's Ability To Do Work-Related Physical Activities

### 1.    Maria King, NP-C

On December 4, 2021, Mr. Kinkennon presented to consultative examiner Maria King, NP-C, for a disability exam.  Tr. 719-729.  Mr. Kinkennon alleged impairments of PTSD, generalized anxiety disorder, tobacco use, knee pain, back pain, right hip pain, arthritis, and neuropathy.  Tr. 719-21.  On physical exam and relevant to the issues raised here, NP-C King noted that Mr. Kinkennon's hand-eye coordination was good but there appeared to be some balance problems; that he had a normal, reciprocal gait pattern; that his muscle tone to bulk was normal with the exception of lower extremities;[6] that sensory examination was normal to pinprick and light touch throughout; that supine straight leg test was positive bilaterally; that there was no joint swelling, erythema, effusion, tenderness or deformity; that Mr. Kinkennon

---

[5] The VE expert identified representative occupations of Routing Clerk (DOT code 222.687-022, light exertion, unskilled, 123,178 jobs nationally); Housekeeping Cleaner (DOT code 323.687-014, light exertion, unskilled, 175,469 jobs nationally); and Mail Clerk (DOT code 209.687-026, light exertion, unskilled, 12,746 jobs nationally).  Tr. 30.

[6] NP-C King noted decreased muscle strength, *i.e.,* 3/5 in Mr. Kinkennon's right hip flexion, hip extension, hip abduction, hip adduction, leg flexion, and leg extension.  Tr. 723.  NP-C King noted decreased muscle strength, *i.e.,* 4/5 in Mr. Kinkennon's left hip flexion, hip extension, hip abduction, hip adduction, leg flexion, and leg extension. *Id.*  NP-C King noted normal muscle strength, *i.e.,* 5/5 in Mr. Kinkennon's right and left deltoids, biceps, triceps, wrist flexion, writ extension, finger abduction, hand grip, ankle plantar flexion, and ankle dorsi flexion.  *Id.*

was able to lift, carry and handle light objects; that he was not able to squat and rise from that position; that he was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table; that he was not able to walk on heels and toes; that tandem walking was normal; and that he could not hop on either foot. Tr. 723-24. NP-C King noted decreased range of motion with forward flexion (right back) (50/90); right and left hip extension (25/30); right and left hip flexion (forward) (25/100 and 45/100); right and left hip abduction (25/30); right and left hip adduction (15/20); right and left hip rotation (internal) (30/40); and right and left hip rotation (external) (40/50). Tr. 725-26. NP-C King assessed moderate limitations in Mr. Kinkennon's ability to sit, stand, walk, bend and squat based on his "right hip." Elsewhere in the assessment portion under a subsection titled "Effort," NP-C King noted "Yes" after "Best Effort" and noted "Yes" after "Need Assist Device?." *Id.* She included in a comments box the word "cane." Tr. 727-28.

The ALJ evaluated and explained as to NP-C King's opinion as follows:

> Maria King, NP-C, opined the claimant had moderate limitations in sitting, standing, walking, bending, and squatting and would need an assistive device (i.e., cane) (Exhibit 12F/10-11). The undersigned finds this opinion partially persuasive. The moderate limitations of sitting, standing, walking, bending, and squatting, though vocationally vague, are supported by the claimant's right hip impairment with reduced range of motion and muscle strength (Exhibit 12F/6, 9). However, the need for an assistive device is not supported by the normal, reciprocal gait with no mention of cane usage (Exhibit 12F/6). The cane usage was not supported by the ability to get up and down from the exam table with no problem and ability to rise from sitting position without assistance (Exhibit 2A/9). The cane usage is not consistent with the steady gait upon exam (Exhibit 15F/6, 10, 13).[7] The cane use

---

[7] Exhibit 15F/6 is a December 13, 2022, treatment note from San Juan Regional Medical Center Internal Medicine where Mr. Kinkennon presented to transfer care. Tr. 762-65. Mr. Kinkennon reported a history of, *inter alia*, chronic pain related to his lower back, right hip, and bilateral knees. *Id.* He also reported that he feels as though his gait is stable "but when he is able to offload weight with a walking stick or cane on occasion his pain improves." *Id.* On physical exam, Savanna D. Jamison, NP, noted Mr. Kinkennon's "[g]ait steady, muscle strength proximal and distal upper muscle groups 4/4 and lower muscle groups 3/4 bilaterally with exacerbated pain with any resistance to flexion, extension, abduction, adduction of leg with movement from hip and knee joints[.]" *Id.* NP Jamison ordered x-rays of Mr. Kinkennon's lumbar spine and ordered a cane "for stability and off loading of weight improving pain." Tr. 764. X-rays demonstrated "[v]ertebral body heights and disc spaces are presented. There is normal alignment curvature of the lumbar vertebral bodies. No fracture of listhesis is present." Tr. 774.

is not consistent with the lack of prescription for assistive device (Exhibit 2A/9). The opinion is not consistent with the limitation to light work with no assistive device usage opined by the state agency medical consultant at the initial level which the undersigned finds more persuasive (Exhibit 2A).

Tr. 27.

### 2.    Randal R. Reid, M.D.

On December 20, 2021, nonexamining State agency medical consultant Randal R. Reid, M.D., reviewed the medical evidence record at the initial stage of Mr. Kinkennon's application. Tr. 79-82.  Dr. Reid's medical record review included the following:

### (a)    San Juan Regional Medical Center

### (1)    Emergency Department

On July 27, 2020, Mr. Kinkennon presented to the emergency department complaining of chest pain and symptoms of shortness of breath and lightheadedness.  Tr. 80, 564.  This record noted that Mr. Kinkennon's heart rate dropped to the 30s; his heart rate improved "[w]hen he got up and walked around"; no motor or sensory deficits; positive for methamphetamine; discussed cessation; CT chest, no abnormalities; improved while in ED; discharged home.  Tr. 80, 565.

On February 2, 2021, Mr. Kinkennon presented to the emergency department with right lower quadrant abdominal pain.  Tr. 80, 525-26.  The record indicates, *inter alia,* no gross deformities appreciated and sensation and motor function of extremities grossly intact.  *Id.* Mr. Kinkennon was diagnosed with constipation and discharged.  *Id.*

---

Exhibit 15F/8 is a July 11, 2023, treatment note by NP Jamison in which she notes on physical exam that "[g]ait is steady, moves all extremities equally, no bony deformity appreciated" and that Mr. Kinkennon's chronic pain is stable on medication regimen with gabapentin.  Tr. 766-69.

Exhibit 15F/13 is an August 15, 2023, treatment note by NP Jamison in which she notes on physical exam that "[g]ait is steady, moves all extremities equally, no bony deformity appreciated" and that Mr. Kinkennon's chronic pain is stable and improving.  Tr. 770-72.

### (2)    <u>Aztec Clinic</u>

On October 13, 2020, Mr. Kinkennon presented to Gayle E. Riley, M.D., seeking a referral to Spine Center "to treat his bulging disc." Tr. 80, 443-444. Mr. Kinkennon reported to Dr. Riley low back pain and right hip pain and no weakness, dizziness or gait/mobility related issues. *Id.* Dr. Riley referred Mr. Kinkennon to Interventional Pain Management. *Id.*

### (3)    <u>Diagnostic Radiology</u>

On December 1, 2021, Mr. Kinkennon underwent radiographic studies for hip pain, bilateral knee pain, arthritis, and neuropathy. Tr. 80, 666-68. Findings included "mild bilateral hip osteoarthritis and CAM-type femoral acetabular impingement," "normal lumbar spine," and "normal bilateral knee radiographs." *Id.*

### (b)    <u>Presbyterian Medical Services</u>

On October 3, 2019, Mr. Kinkennon presented for neuropathy and medication refill. Tr. 80, 455-60. On physical exam, James A. Bigham, CNP, noted, *inter alia,* visual overview of all four extremities is normal. *Id.* CNP Bigham prescribed gabapentin and ibuprofen for neuropathy and knee pain. *Id.* CNP Bigham counseled on smoking cessation, nutrition, and increased activity of 30-60 min/day 3-5x week. *Id.*

On April 23, 2020, Mr. Kinkennon presented by telephone to CNP Bigham for neuropathy and musculoskeletal pain. Tr. 80, 461-66. CNP Bigham refilled prescriptions for gabapentin and ibuprofen. *Id.*

On May 29, 2020, Mr. Kinkennon presented by telephone to CNP Bigham for neuropathy. Tr. 80, 477-80. CNP Bigham noted that Mr. Kinkennon's neuropathy was "controlled with gabapentin and ibuprofen." *Id.*

On June 5, 2020, Mr. Kinkennon presented by telephone to Georgina Rotzler, PMHNP-BC, for medication management. Tr. 80, 486-90. Mr. Kinkennon explained "I got off the medication about two months ago." *Id.* PMHNP Rotzler refilled gabapentin and ibuprofen prescriptions, and newly prescribed quetiapine and sertraline related to generalized anxiety disorder. *Id.* PMHNP Rotzler instructed Mr. Kinkennon to establish care with a PCP, exercise, and find gainful employment. *Id.*

On January 22, 2021, Mr. Kinkennon presented by telephone by PMHNP Rotzler for medication management. Tr. 80, 504-10. Mr. Kinkennon complained he was unable to stay asleep. *Id.* PMHNP Rotzler added buspirone to Mr. Kinkennon's medication therapy. *Id.* PMHNP Rotzler noted that Mr. Kinkennon was medication compliant and instructed him again to establish care with a PCP, exercise, and find gainful employment. *Id.*

### (c)    Other

Dr. Reid also reviewed NP-C King's consultative exam report and a Third-Party Adult Function Report completed by Mr. Kinkennon's father. Tr. 80. Dr. Reid noted that Mr. Kinkennon had failed to return his Function Report. *Id.*

Based on the foregoing review of the medical evidence record, Dr. Reid assessed that Mr. Kinkennon could occasionally lift and/or carry twenty (20) pounds; could frequently lift and/or carry ten (10) pounds; could stand and/or walk (with normal breaks) for a total of about six (6) hours in an 8-hour workday; could sit (with normal breaks) for a total of about six (6) hours in an 8-hour workday; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ladders/ropes/scaffolds. Tr. 79. Dr. Reid explained:

> Clmt has MDI for mild b/l OA and CAM type femoral acetabular impingement, LE sensory Neuropathy, Chronic pain in b/l knees. Recent XRs of b/l knees were normal. There is a 1.2 x 0.2 cm sclerotic lesion in the proximal left fibular, likely a benign bone island. During CE, clmt had no overt evidence of acute or chronic

physical illness.  Muscle tone to bulk were normal with the exception of lower extremities, due to R hip.  He appeared to have some balance problems, normal gait.  Provider opined the following limitations: Moderate in sitting, standing, walking, bending, squatting due to R hip.  He uses a cane but was able to get up and down from exam table with no problem, able to rise from sitting position w/o assistance.  No Rx for an AD.

The claimant's statements concerning the intensity, persistence & limiting effects of these symptoms are not fully consistent with the EOR.  Given the totality of the available evidence and the discussion above, the clmt is found to be capable of the function of this RFC.

Tr. 80-81.

The ALJ evaluated and explained as to Dr. Reid's opinion as follows:

The state agency medical consultant at the initial level opined the claimant could perform light work with occasional postural limitations (Exhibit 2A).  The undersigned finds this opinion persuasive.  The opinion is supported by the osteoarthritis of the right hip with CAM type femoral acetabular impingement on imaging but normal lumbar spine x-ray and normal bilateral knee radiographs (Exhibit 2A/7-8).  The opinion is consistent with the evidence submitted for consideration at the hearing level including steady gait with normal exam and significant improvement in pain and muscle spasms with stable low back and right hip with medication (Exhibit 15F/8, 10, 12, 13).[8]

Tr. 26-27.

### 3.   Cheryl Lowry, M.D.

On December 28, 2022, nonexamining State agency medical consultant Cheryl Lowry, M.D., reviewed the medical evidence record at reconsideration.  Tr. 95.  Dr. Lowry noted as follows:

43 y/o clmnt alleging: PTSD, Knee Problem BOTH, Back Problem; Hip Problem RIGHT SIDE.  Received light RFC at IN.  At RECON, no new forms were returned; no new MER.  Unable to determine from previous MER if RFC restriction recommendations remain valid.  IE for RECON due to [failure to cooperate].

*Id.*

---

[8] *See* fn. 7, *supra*.

The ALJ explained as to Dr. Lowry's notes that "[t]he state agency consultants at the reconsideration level found the record contained insufficient evidence (Exhibit 3A).  The undersigned does not find these opinions vocationally relevant.  The opinions do not address the claimant's functional limitations so they do not require evaluation for persuasiveness."  Tr. 27.

### 4.    San Juan Regional Medical Center Internal Medicine

On December 13, 2022, Mr. Kinkennon presented to Savanna D. Jamison, NP, for "transfer of care" related to chronic pain of back, hip, and knees.  Tr. 762-65.  Mr. Kinkennon reported, *inter alia*, that he "[f]eels as though his gait is stable but when he is able to offload weight with a walking stick or cane on occasion his pain improves."  *Id.*  On physical exam, NP Jamison noted that Mr. Kinkennon's "[g]ait is steady, muscle strength proximal and distal upper muscle groups 4/4 and lower muscle groups 3/4 bilaterally with exacerbated pain with any resistance to flexion, extension, abduction, adduction of legs with movement from hip and knee joints."  *Id.*  NP Jamison assessed that Mr. Kinkennon's chronic pain was stable, she provided him with back exercises handout, ordered imaging, and ordered a cane "for stability and offloading of weight improving pain."  *Id.*

On July 11, 2023, Mr. Kinkennon presented to NP Jamison for follow up.  Tr. 766-69.  Mr. Kinkennon reported good relief with gabapentin.  *Id.*  On physical exam, NP Jamison noted "[g]ait is steady, moves all extremities equally, no bony deformity appreciated."  *Id.*  NP Jamison assessed that Mr. Kinkennon's chronic pain was stable, instructed him to continue with current medication regimen, and added baclofen for muscle spasms.  *Id.*

On August 15, 2023, Mr. Kinkennon presented to NP Jamison for follow up.  Tr. 770-72.  Mr. Kinkennon reported significant improvement in his pain and muscle spasms with the addition of baclofen.  *Id.*  On physical exam, NP Jamison noted "[g]ait is steady, moves all

extremities equally, no bony deformity appreciated." *Id.* NP Jamison assessed that Mr. Kinkennon's chronic pain was stable and improving with use of baclofen as needed. *Id.* She instructed him to continue current stretching and medication regimen. *Id.*

**B.**    **The ALJ Properly Applied the Legal Standard for Evaluating Opinion Evidence and the RFC Is Supported by Substantial Evidence**

Mr. Kinkennon's argument to support remand is based on the ALJ's evaluation of NP-C King's opinion and RFC. Doc. 12 at 5-9. First, Mr. Kinkennon argues that the ALJ's explanations for rejecting Mr. Kinkennon's need for an assist device are invalid and flawed. *Id.* Second, Mr. Kinkennon argues that the RFC conflicts without explanation with portions of NP-C King's opinion that the ALJ purportedly found persuasive. The Court addresses each in turn.

**1.**    **Mr. Kinkennon's Need for an Assistive Device**

As noted above, Mr. Kinkennon presented to NP-C King for a disability exam on December 4, 2021. Tr. 719-28; *see* Section III.A.1, *supra*. In the "Assessment" portion of her report under a subsection titled "Effort," NP-C King indicated "Yes" in answer to "Need Assist Device?" and then wrote "cane" in the "Comments." Tr. 728. The ALJ considered and explained that NP-C King's assessment for an assist device was not supported by her physical exam in which she noted that (1) Mr. Kinkennon had a "normal, reciprocal gait" with no mention of cane usage; (2) Mr. Kinkennon was able to get up and down from the exam table with no problems; and (3) Mr. Kinkennon was able to rise from a sitting position without assistance. Tr. 27. The ALJ also found NP-C King's opinion regarding Mr. Kinkennon's need for a cane was inconsistent with (1) subsequent treatment notes indicating steady gait upon exam; (2) no previous prescription for an assistive device; and (3) other medical opinion evidence. *Id.*

Mr. Kinkennon argues that the ALJ's explanations for rejecting NP-C King's assessment regarding Mr. Kinkennon's need for an assist device are legally invalid and flawed for two

reasons.  First, Mr. Kinkennon argues that NP-C King's notation in her report regarding

Mr. Kinkennon's need for an assist device "plainly indicates" that it was *a factor in his effort*

during the exam and supports he used a cane throughout the exam.  Doc. 12 at 6-7.  On this

basis, Mr. Kinkennon argues that the ALJ's explanation that NP-C King's physical exam reflects

a "normal, reciprocal gait *with no mention of a cane*" is an impermissible statement of fact and

therefore invalid.  *Id.*  Second, Mr. Kinkennon argues that the ALJ selectively discussed and

relied upon physical findings from NP-C King's exam to reject Mr. Kinkennon's need for an

assist device and in turn failed to discuss, consider, or adequately explain physical exam findings

that supported NP-C King's opinion, *i.e.,* Mr. Kinkennon had balance problems and diminished

strength and range of motion in his legs.  *Id.*  The ALJ's failure to do so, Mr. Kinkennon argues,

amounts to the ALJ impermissibly cherry-picking from the medical record to support his desired

conclusion.  *Id.*

The Commissioner disagrees and contends that the ALJ reasonably evaluated the medical

opinion evidence in accordance with the applicable regulations and in light of the overall record.

Doc. 16 at 5-11.  The Commissioner contends that the ALJ explicitly considered NP-C King's

assessment that Mr. Kinkennon needs a cane and explained why he found it unsupported based

on certain of NP-C King's physical exam findings.  Doc. 16 at 6-11.  The Commissioner further

contends that the ALJ did not ignore or "decline to mention" the "abnormal" findings

Mr. Kinkennon cites but specifically considered and discussed those findings in his summary of

the medical evidence.  *Id.*  The Commissioner contends that the ALJ additionally found NP-C

King's assessment regarding an assist device inconsistent based on the overall record.  *Id.*  For

instance, the Commissioner contends that the ALJ considered Mr. Kinkennon's January 2022

Function Report in which he indicated he used a cane but that it was not prescribed.  *Id.*  The

Commissioner contends that the ALJ recognized that although a treatment provider did subsequently order a cane for "stability," that provider also noted on physical exam that Mr. Kinkennon's gait was steady and that Mr. Kinkennon reported he "feels as though his gait is stable" but that his hip pain improved when using a walking stick or a cane "on occasion." *Id.* The Commissioner contends that the ALJ also cited subsequent treatment notes that did not indicate Mr. Kinkennon used a cane and that diagnostic studies showed a normal lumbar spine, normal knees, with mild hip osteoarthritis. *Id.* Finally, the Commissioner contends that an ALJ only need accommodate the use of an assistive device, like a cane, in the RFC if the claimant has established that it is "medically required," and that Mr. Kinkennon has not carried his burden in doing so here. *Id.*

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. § 416.920c(a). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.' " *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021).

(internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 416.920c(c)(1)).

Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a

medical opinion(s) is with the evidence from other medical sources and nonmedical sources in

the claim, the more persuasive the medical opinion(s) will be.' " *Id.* (internal ellipsis omitted)

(quoting, *inter alia*, 20 C.F.R. § 416.920c(c)(2)).  The SSA does not give "any specific

evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §

416.920c(a).

    When evaluating the supportability and consistency of a medical source's opinions, "all

the ALJ's required findings must be supported by substantial evidence, and he must consider all

relevant medical evidence in making those findings."  *Lobato v. Kijakazi*, 2022 WL 500395, at

*11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262).  The ALJ also cannot "pick

and choose among medical reports," using only portions of evidence that are favorable to his

position and disregarding those that are not.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir.

2004).  This requirement, though, does not mean that the ALJ must discuss every piece of

controverted evidence.  *See Clifton*, 79 F.3d at 1009-10.  Rather, it merely requires the ALJ to

show that he considered evidence unfavorable to his findings before making them.  *See id.* at

1010.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and

"[j]udicial review is limited to the reasons stated in the ALJ's decision."  *Carpenter v. Astrue*,

537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

    The Court finds that the ALJ's explanations for rejecting NP-C King's assessment

regarding Mr. Kinkennon's need for an assist device are supported by substantial evidence.

Here, Mr. Kinkennon argues, on the one hand, that the ALJ erred by not appreciating that NP-C

King's notation in her report regarding his need for an assist device was plainly meant to define

conditions of the exam.  On the other hand, however, Mr. Kinkennon argues that the ALJ erred

in rejecting NP-C King's *opinion* that he needs an assist device because he failed to adequately

address certain physical findings from her report that were supportive thereof.  The Court is not

persuaded by either of Mr. Kinkennon's seemingly contradictory arguments.  As to the former,

the ALJ accurately explains that in the objective portion of NP-C King's exam she indicates

"normal, reciprocal gait" and that there is no mention of cane usage.  Additionally, the ALJ

accurately explains that NP-C King noted that Mr. Kinkennon was "able to rise from a sitting

position without assistance and had no difficulty getting up and down from the exam table."  Tr.

724.  The Court further notes that NP-C King's report does not document as part of

Mr. Kinkennon's reported history that he was using or required the use of a cane.  To the

contrary, NP-C King noted in the "History of Present Illness" section of her report, which the

ALJ discussed elsewhere, that Mr. Kinkennon reported that pain related to his knees, back, and

right hip was relieved by medication and rest.  Tr. 25, 719.  Moreover, it is undisputed that the

only mention of the need for an assist device is in a subsection of the Assessment section of NP-

C King's report and that there is no mention of a cane elsewhere in NP-C King's report.  Based

on the foregoing, the Court finds that the ALJ's explanation that NP-C King did not mention

cane usage when noting that Mr. Kinkennon had "normal, reciprocal gait" is supported by the

plain reading of NP-C King's report and does not amount to "an impermissible misstatement of

fact."  As such, Mr. Kinkennon's argument as to this explanation is unavailing.

     As for Mr. Kinkennon's second argument, the Court finds the ALJ did not impermissibly

pick and choose from NP-C King's opinion that he needs an assist device to support a desired

outcome.  Here, the ALJ cites objective physical exam findings from NP-C King's report that do

not support her opinion regarding Mr. Kinkennon's argued need for an assist device, *i.e.,* a

normal, reciprocal gait with no mention of case usage; his ability to get up and down from the exam table without difficulty; and his ability to rise from sitting position without assistance. Tr. 27, 724. The ALJ also cites subsequent treatment provider notes and other medical opinion evidence that were inconsistent with NP-C King's opinion. Tr. 27. Additionally, when considering Mr. Kinkennon's alleged symptoms earlier in his decision, the ALJ discussed the medical evidence record which included a detailed account of *all* of the findings from NP-C King's disability exam. Tr. 25. In particular, the ALJ discussed that NP-C King noted "[h]and-eye coordination was good. There appear to be some balance problems," but that NP-C King indicated Mr. Kinkennon's gait pattern was normal and reciprocal. Tr. 25, 723. The ALJ's discussion also included NP-C King's ratings of Mr. Kinkennon's muscle tone in his lower extremities and certain functional limitations, *i.e.,* inability to squat and rise, walk on heels and toes, or hop on either foot. Tr. 25, 724. Mr. Kinkennon nonetheless argues that the ALJ's discussion of this evidence should have been relative to his supportability analysis of NP-C King's opinion. The Court does not agree. While Tenth Circuit law clearly prohibits an ALJ from picking and choosing among medical reports and using only those portions that are favorable to his position, this does not mean every piece of controverted evidence must be discussed or, as Mr. Kinkennon argues, must be discussed in a particular context or section of the ALJ's decision. What is required is that the ALJ show that he considered evidence unfavorable to his findings before making them. The ALJ did so here. Additionally, inasmuch that Mr. Kinkennon cites objective medical evidence that could be supportive, the Court finds his argument functions as an invitation to reweigh the evidence before the ALJ, contrary to the charge of the applicable standard of review. *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806,

808 (10th Cir. 2021) (setting out the reviewing court's standard of review and noting that it does not "reweigh the evidence or retry the case").

Finally, the Commissioner contends that Mr. Kinkennon's argument that the ALJ erred in rejecting NP-C King's opinion regarding his need for a cane is without merit because NP-C King's opinion does not establish that a cane was medically necessary as required by SSR 96-9p. Doc. 16 at 8.  In his Reply, Mr. Kinkennon argues that this contention amounts to post-hoc rationalization because it relies on a rationale the ALJ never endorsed.  Doc. 18 at 2-3.  He also argues that it overlooks that his argument rests on the invalidity of the ALJ's explanations for finding NP-C King's opinion only partially persuasive - error which necessitates remand.  Doc. 18 at 2-3.  Mr. Kinkennon maintains and reasserts that the ALJ improperly focused on a single finding, "reciprocal gait," to find Mr. Kinkennon's need for a cane was unsupported without addressing all of the remaining findings NP-C King made in support of her opinion that a cane is "medically necessary," and that the ALJ's second reason, "no mention of case usage," is premised on an impermissible misstatement of fact.  *Id.* at 3.  As discussed above, the Court has addressed Mr. Kinkennon's arguments and has found them to be without merit.

Further addressing Mr. Kinkennon's Reply, the Court adds that while not discussed relative to his evaluation of NP-C King's opinion, the record supports that the ALJ did in fact conclude that the medical record evidence "suggests there is no medical necessity for the use of a cane." Tr. 28.  In his concluding paragraphs, the ALJ stated that

> The claimant reported cane usage.  He indicated the cane was not prescribed by a doctor (Exhibit 6E/7).  Subsequently, the physician ordered a cane for "stability" but the claimant's gait was noted as steady.  The x-rays done were normal and the MRI was ordered but there is no record of any results.  There was no cane usage at the visit in July of 202[3].  Previous x-rays showed normal lumbar spine, normal knees, with mild hip osteoarthritis.  This all suggests there is no medical necessity for the use of a cane.  Therefore, the undersigned did not include cane usage in the RFC herein.

Tr. 28. Additionally, case law points out that medical necessity is shown only where the claimant presents "medical documentation establishing the need for a hand-held device . . . and describing the circumstances for which it is needed (*i.e.,* whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (citing SSR 96-9p, 1996 WL 374185, at *7). A claimant need not show that he was prescribed an assistive device but must provide medical documentation establishing the need for one. *Id.* at 191-92 (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity). Mr. Kinkennon cites no evidence from NP-C King's opinion wherein she describes the circumstances for which he needs a cane. Thus, Mr. Kinkennon's modified argument in his Reply—that the ALJ erred by failing to address evidence from NP-C King's report that supported her opinion that a cane was "medically necessary"—is clearly misplaced and improper.[9]

## 2. **RFC**

Mr. Kinkennon argues that the RFC conflicts, without explanation, with portions of NP-C King's opinion that the ALJ purportedly found persuasive. Doc. 12 at 8-9. Mr. Kinkennon argues that the ALJ found NP-C King's opinion regarding moderate limitations in sitting, standing, walking, bending, and squatting were supported by claimant's right hip impairment with reduced range of motion and muscle strength, yet failed to explain why he did not include corresponding limitations in the RFC. *Id.* Mr. Kinkennon further argues that the ALJ implicitly

---

[9] The Court does not ordinarily consider new issues raised in a reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). It is clearly settled that a party cannot raise new issues in a reply brief, only respond to arguments raised for the first time in a response brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009); *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2009) (issues raised for the first time in a reply brief are generally deemed waived).

concluded that a moderate limitation in bending and squatting resulted in only *occasional* bending and squatting, while concluding that a moderate limitation in sitting, standing, and walking resulted in light work which requires "a good deal of walking or standing" or "sitting most of the time." *Id.* In sum, Mr. Kinkennon argues that the ALJ's failure to reconcile his evaluation of NP King's opinion with his assessment of Mr. Kinkennon's RFC is legal error and the RFC is not supported by substantial evidence.

The Commissioner contends that Mr. Kinkennon's argument is flawed because (1) NP-C King's findings of certain "moderate" limitations were not stated in vocationally relevant terms; and (2) the ALJ did not find NP-C King's findings wholly persuasive. Doc. 16 at 11-13. The Commissioner contends that the ALJ found NP-C King's opinion only "partially persuasive," and explained that while he found NP King's "moderate" limitations in certain areas of physical functioning to be "vocationally vague" they were nonetheless supported by her findings of reduced range of motion and muscle strength in Mr. Kinkennon's legs and hips. *Id.* The ALJ concluded, however, that NP-C King's overall findings were not fully persuasive because they were inconsistent with other record evidence.

The Commissioner further contends that the ALJ then evaluated the prior administrative findings of Dr. Reid and found Dr. Reid's assessment more persuasive. *Id.* The Commissioner contends that the ALJ found that Dr. Reid's assessment was supported by Mr. Kinkennon's x-rays showing a normal lumbar spine, normal knees, and mild hip osteoarthritis and impingement; and that Dr. Reid's assessment was consistent with Mr. Kinkennon's treatment records which showed a "steady gait" and significant improvement in Mr. Kinkennon's pain and muscle spasms with medication. *Id.* Finally, the Commissioner contends that the Court can easily trace the path of the ALJ's reasoning in finding Dr. Reid's assessment more persuasive

than NP-C King's, and thus assessing a physical RFC that tracked Dr. Reid's findings rather than NP-C King's. *Id.*

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[10]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells,* 727 F.3d at 1065; *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that the ALJ's RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781,

---

[10]  The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

784-85 (10th Cir. 2003). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "As long as substantial evidence supports the ALJ's determination, the Secretary's decision stands." *Id.* The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

The Court finds the ALJ's RFC assessment is supported by substantial evidence. Here, the ALJ considered NP-C King's opinion and found it to be "partially persuasive." Tr. 27. After making this assessment as to her opinion overall, the ALJ then went on to specifically address the moderate limitations she assessed with respect to sitting, standing, walking, bending, and squatting, as well as the need for an assist device *Id.* As Mr. Kinkennon points out, the ALJ explained that while NP-C King's assessment as to these moderate limitations was "vocationally vague," he nonetheless found they were supported by Mr. Kinkennon's right hip impairment. *Id.* The ALJ also, as discussed above, found NP-C King's assessment regarding the need for an assist device not supported. *Id.* Mr. Kinkennon's argument is premised on equating the ALJ's word usage of supported and not supported with fully persuasive and not persuasive. This argument, however, mischaracterizes the ALJ's explanation by overlooking both his introductory sentence in which he states his overall assessment of NP-C King's opinion as partially persuasive and his concluding sentence in which he states that NP-C King's "opinion is not consistent with the limitation to light work with no assistive device usage opined by the state agency medical consultant at the initial level which the undersigned finds more persuasive." Tr. 27. Thus, the ALJ made no finding that NP-C King's moderate limitations were fully persuasive. The Court finds, therefore, that the premise of Mr. Kinkennon's argument is not supported by the record.

23

Moreover, the ALJ explained why he did not adopt NP-C King's assessed limitations, *i.e.,* they were inconsistent with medical opinion evidence he found more persuasive.

In sum, the Court finds that the ALJ has provided the Court with a sufficient basis to follow his reasoning and to determine that appropriate legal principles have been followed. The ALJ assessed the persuasiveness of NP-C King's opinion and explained how he considered the factors of supportability and consistency, as required under agency regulations. He provided specific reasons supported by substantial evidence for finding NP-C King's opinion partially persuasive. Further, in determining the RFC assessment, the ALJ included a narrative discussion describing how the evidence supported his conclusions. The Court finds no error.

## IV.  Recommendation

For all of the reasons stated above, the Court finds that Mr. Kinkennon's Motion is not well taken and recommends that it be **DENIED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**